Moving on to our last case of the morning, number 25-2201 United States v. Jermaine Stapleton. Good morning Mr. Greenberg. May it please the court, Jonathan Greenberg, Associate Federal Defender on behalf of the appellant Jermaine Stapleton. This case presents an issue left open by the Supreme Court in its decision at Asteris. Can a district court, in imposing sentence after revocation, consider the need for retribution for the underlying violation? Yes, Your Honor. So you're saying this issue has not been resolved? Yes, it is left open. That's explicit in footnote 5 of the opinion. So you're no longer contending that the district court erred under Asteris? Asteris informs the court's analysis. This is not an Asteris error because Asteris is about the ability of the court to consider retribution for the predicate offensive conviction, which is plainly not what happened here. So this is a permutation, a variation of Asteris. The district court violated Asteris, you wrote. That was probably an overstatement and I tried to walk that back in the reply brief. I do concede this is an open question, and that is why the standard review matters. If this is plain error, I fully concede that I lose because there is no case on all fours. It's an open question. And it makes sense that Asteris didn't resolve the question. That wasn't the exact error in Asteris. That would have been dicta and would have amounted to advisory opinion. But Asteris nevertheless illuminates the error here because if the court applies the exact same analysis the court applied in Asteris, the court will reach the same conclusion. Asteris essentially had two points, both grounded in statutory interpretation. The first issue was the scope of 3583 sub E. For many years, there was a circuit split. Is this an exhaustive or non-exhaustive list? And in Asteris, the Supreme Court held that is an exhaustive list. Those are the only things a district court can consider in imposing sentence upon revocation. And if the court looks at that list, there is no enumerated factor allowing the court to consider the need for retribution to impose consequences and accountability for the violation itself. So, Mr. Greenberg, your last few words there were very interesting. The district court never used the word retribution. Yes, Your Honor. Correct?  It said accountable. Yes. That sure sounds to me like it's at least, well, it's ambiguous, but it certainly can reach breach of trust with the court. It could be relevant to deterrence, incapacitation, which are permissible, right? Yes. So why do we leap to the conclusion that the district judge's somewhat ambiguous comments reflect the one impermissible theory, according to you? If we just had the words consequences and accountability, I would have a problem because, as you pointed out, they can go to permissible factors, but the court has to look at the entire pronouncement in context. At the start of the hearing, the district court explicitly disavowed deterrence. It appears later on in its boilerplate recitation of the factors, but when you have that disavowal, I think it's hard to say this was a sentence grounded in deterrence. And as to incapacitation, the only time the court cites incapacitation is, again, in that end of the hearing pronouncement. And the court never pushed back against the defense's assertion, this person is not dangerous, this person is not violent, and therefore there is no need for incapacitation to inform the sentence. So really what we're left with is, can this case be slotted into the breach of trust prong? And I think the answer is no. If the court looks at Dawson, its most recent discussion of the breach of trust theory, it really stressed two things. One, while you can consider the breach of trust in sentencing upon revocation, that flows from the policy statement in Chapter 7b.3, both the policy statement and all the circuit courts to consider that statement stress, you can consider breach of trust, but you cannot punish for the underlying offense. To quote Dawson, the point is not to punish a defendant's violation as if it were a new crime. I know that slices the salami pretty thinly, but that's the line the courts have drawn. But much more importantly, in Dawson, this court stressed, this was a permissible breach of trust sentencing because the district court's sentencing pronouncement was still permeated with breach of trust language. In the Dawson opinion, the court discussed how the court said over and over again, you've shown a lack of respect for supervision, for the court's conditions. What you did in this case is an affront to the court. And all of that sounds in breach of trust. And you don't have any of that here. If the court had said- Counsel, I mean, the judge didn't pound on your client. Yes. But I do see that language. On Appendix 27, the judge says the defense counsel is now advocating for a sentence that would have been appropriate before the defendant chose to stay, an opportunity for rehabilitation. I don't see breach of trust, those words exactly. But I see the through line in the judge's comments as a whole. I believe that portion of the transcript could be read to sound in breach of trust. I do concede that. But that is not the error complaint of on appeal. What we are complaining of is the court's discussion of consequences, accountability, and those backwards-looking considerations, which appear elsewhere. And most importantly, those were the drivers of the court's sentence. Because if the court looks at its decisions in a case like Shaw, when we jump to the question of prejudice, I don't lose if the court considered other permissible factors. I do win if the impermissible factor was the driving force. And this discussion of consequences and accountability was the driving force behind the sentence. And for that reason, we do maintain this. But what do you base that on? Because the theme I got here was send a message, which to me is a classic message of deterrence. He gave your client a chance. Your client blew it. Breach of trust. And the judge is grappling with, what do I do to turn the course for Mr. Stapleton? And so I read it as a message of deterrence. But how could it be a message of deterrence when the district court specifically said, I do not view it as sending a message of deterrence? If he had said, point blank, you need to be deterred. Because I think he's expressing frustration. I don't know if this is going to deter, but I'm going to try. That's how I read that comment. I hear your argument, but when you read the transcript as a whole, it sounds more like deterrence to me. And respectfully, Your Honor, I just don't read it that way. Because if the court had said, I don't think this message is going to work, but here goes anyway, that would be one thing. But when the court grounds its message in terms of consequences, which is backwards looking, and the Asteris court stressed, you can't. Mr. Greenberg, you did raise Asteris in a pre-sentencing letter. But you're now saying this is not actually an Asteris issue per se. At least it's not within all fours of Asteris. And this issue was never raised at sentencing. So I take it you're arguing the district court should have sort of sua sponte intuited your desired extension of Asteris without anyone asking it to or making that argument at sentencing? That is not what I'm suggesting, Your Honor. The preservation standard here is controlled by this court's Rule 51a precedent. When it comes to the preservation of these sorts of procedural errors, this court has been very clear, even post-Asteris, a defendant need not take exception to the district court's sentencing explanation. But you want us to say that the district court erred. Yes. And its error, I take it, was not sua sponte intuiting what you now proposed as an extension of Asteris. Is that right? Its error was relying on backwards looking sentencing considerations that are outside the scope of 3583 sub e. Which neither the Supreme Court nor this court has ever held as an error. Yes. But this court's review was de novo because under the crystal clear and in place precedent, even in cases as recently as Richard's, the defense need not take exception to an already made ruling and explanation and invite the ire and potential contempt of the court. I see that I'm eating into my rebuttal. I will reserve the remainder of my time unless there are any further questions. Thank you, Mr. Greenberg. Thank you. Mr. Ayala. May it please the court. Good morning, your honors. My name is Steven Ayala and I represent the United States in this case. I ask you to affirm the district court's revocation sentence under any standard of review. Asteris prohibits revocation sentences from considering retribution for the underlying offense as we've just outlined. And as we just heard again, that is not what happened here. Here the district court imposed a revocation sentence that considered only the permissible factors of the forward looking goals described in 3583E. No asteris error occurred. For the first reason why no error occurred is because the sentence was not retributive. The district court agreed with the letter from Stapleton's attorney at the lower court that incarceration was needed. It was needed for Stapleton to take seriously the court provided tools. It was needed for future supervision to have any teeth and to accomplish the forward looking goals. The government also agreed, and it still agrees, that the district court invoked only those forward looking goals of deterrence, as we've talked about earlier, of rehabilitation. And it's in the context of rehabilitation that consequences is brought up. Consequences for repeatedly ignoring this need. This is the type of consequence that's more akin in context to a need for rehabilitation, a need for confrontation, a need for an intervention. Lastly, the need for protection of the public in describing the district court's crash and burn characterization, capturing Mr. Stapleton's utter lack of control and diminished capacity. This kind of goes into the disavowal that has been alleged that the district court took of deterrence, when it doesn't read like that as a whole. That was taken in isolation, as I believe the court is already sort of picking up on. And it's also a question of insight. During the same transcript, the judge is also, at Appendix 27, acknowledging the insight problem that Mr. Stapleton was having. And the courts can still send a message of deterrence, even if the defendant is expected to struggle with initially receiving that message at that time. And that's, of course, as to the specific deterrence that Mr. Stapleton would be receiving at that time. To the extent the court may see the sentence as retributive as to the supervised release violations, this is distinct from 3553A2A. Everything the district court relied on is consistent with the breach of trust framework that this court supports and the Sentencing Commission guidelines and policy statements advises. They're all in bounds, because they are permissible under Asteris, they're permissible under this court's precedent, and under 3583E. In other words, the accountability for the violations is consistent with that breach of trust framework that is permissible today. Asteris didn't reverse any of the court's precedent about the breach of trust framework, because they're not in conflict. That's because our precedent didn't consider retribution for the underlying offense. And for this reason, no error can be said to have occurred. If the court does not have any questions for me, I will cede my time and ask the court to affirm the district court's… I have one question for you on the standard of review. So Mr. Stapleton did cite Asteris in a pre-sentencing letter brief, right? That's correct. And I know the briefs were sort of filed on the assumption that this was an alleged Asteris error, so let's just pretend that we're still talking about that. Does that pre-sentencing filing affect the standard of review here in the sense that, like, does it preserve an Asteris claim even if one was not ever raised at sentencing? Your Honor, I don't think it does, because while there was a mention of sort of the case law going into the sentencing hearing, it wasn't until the hearing, the second revocation hearing that the sentence was being passed down, that the district court effectively came out and said, I'm thinking about an at-or-above-guidelines sentence here, and for these reasons. And it was in the pre-sentence explanation that we got into a lot of the mindset of the judge, consequences for repeatedly ignoring this need, talking extensively about the extension of trust that the court had just handed that was thrown away during the crash and burn. And then there was a pause, Your Honor. And so I think this was the opportunity to seek clarity. So we've already heard the word consequences. We've already heard that this is aligning with maybe a retribution-adjacent argument, but one that we do not concede. And is it that time that Stapleton's attorney should have read or should have raised the consequences? Your Honor, it sounds retributive. Are we in 3553A2A territory? Are we considering that at all here? And is the sentence driving that? I know at that point we hadn't heard an exact sentence, but we knew a tentative range. We knew at-or-above guidelines. We knew the reasoning before it. And again, there was that call for argument. And so I think for that reason, that was the opportunity to preserve, and it was not. You said there was a pause. Were you in the room? I mean, are we talking about seconds? Are we talking about a recess or what? I didn't hear the transcript. I wasn't in the room, Your Honor. I'm reading from the transcript. And what I mean by that is I believe that there was the stop of the court's pre-sentence explanation. This is where I'm at. This is where I'm going with the sentence. I'm going to now hear from the defendant, hear from the defense counsel, hear from the government, and hear from the defendant. So that is what I interpret as the pause, but I think it's just the stop of what the judge was explaining. I'm going to hear from the parties, and then I'll go into the imposition of sentence. Okay. Yes, and I don't know about Judge Maldonado's experience or what Judge Tableson saw, but at least in my experience as a district judge, the way I would try to basically provide a clear record that would try to protect from ambush on appeal, those decisions would be to say, I intend to impose the following sentence for the following reasons. Anybody have any, and then before actually imposing it, ask for objections. That is enough to, as I understand it, put the onus on the defense to raise the issue. But that wasn't done here. I don't think it was done that way in those exact words, Your Honor, but I think effectively that's kind of what it played out to be. And so I understand that the judge did come out again and talk about, let's recap what just happened, because again, this was the second revocation hearing, and so there was some context that we needed to bring up to speed on. And then that's when we got into the judge's mind. And again, we got into the judge's general idea of where they were going in terms of time that they were looking at for an incarceration sentence, and then there was the call for argument. And so not in those exact words, Your Honor, but I do think that was enough to trigger an objectionable opportunity at that point. Thank you. Thank you, Your Honors. Thank you. Mr. Greenberg. I have two or three brief points. I'll try to be quick. To answer Judge Tableson's question, I do think the letter matters, the pre-hearing letter. The whole point of preservation is we don't want parties to stand back and ambush the judge and then come on appeal with an unpreserved claim. And here, days before the hearing, just a week or two after asterisks, the defense said, hey, here's this asterisks case. You cannot impose a sentence for a backward-looking reason. You can't punish him for his violation just for forward-looking reasons. So I think that it is relevant to the question of preservation. And as for this alleged pause, there was no pause in the transcript. There was no invitation for objection. And more fundamentally, there was no error. I'm sorry, counsel. Didn't the court ask to hear from the parties after it made a lot of the statements that you're objecting to? It asked to hear from the parties, but it didn't ask for any. The more fundamental point, Your Honor, is there was no error at that point. Sorry, so are you disclaiming any objection to the district court's comments that predated his request for the parties to talk? There was no objection by that point, but there was no error to object to. The entire issue on appeal was, was the court's explanation for its sentence erroneous? And the sentence didn't exist yet. That wasn't a part of the sentencing explanation. That came much later. And if I may briefly end on this point, I think it's no coincidence that the actual sentence explanation perfectly tracks 3553A2A, A2B, and A2C. And I don't think we can shoehorn this case purely into deterrence because if that was the case, what does accountability mean in the sentencing pronouncement? And it can only mean one thing, the backwards-looking end of retribution. For these reasons, I respectfully ask the court to reverse. Thank you, Mr. Greenberg. The case is taken under advisement, and the court is in recess. Thank you. Thank you.